Thank you, Your Honor. May it please the court. My name is Mitchell Murray and I represent the Plaintiff Appellant Cindy Castillo. I would like to reserve five minutes of my time for rebuttal if I may. Plaintiff respectfully requests that this court rehearse the District Court's order denying class certification over overtime claim for two main reasons. First, the District Court's order that plaintiffs must establish a common policy or calculation that, quote, uniformly establishes any liability contravenes the predominance requirement under Rule 23b-3. The plain text of Rule 23b-3 requires that the court find that common issues predominate over individual issues, not that there be no individual issues at all. Second, the District Court's finding that defendants' predominance argument is an issue of liability and not damages conflates Rule 23 certification with merits. Here, Plaintiff moved for class certification under Rule 23b-3 on her overtime claim based on the common overtime policies that apply uniformly to all class members. The District Court correctly found that Plaintiff established Rule 23a numerosity, commonality, and typicality requirements. However, the court erroneously concluded that Plaintiff failed to establish Rule 23b-3's predominance requirement. Let me ask you a question if I may. If I understand the bank's argument correctly, or at least one of their arguments, it was that some very large percentage of the class that was identified in the class claim was never exposed to the policy because in order to be exposed to the policy, you have to have worked overtime and received an incentive bonus during the same pay period. And the bank estimated that 30-40% of the class didn't meet those criteria. So that seemed to be one of their key arguments as to why there was no predominance. Could you address that? I'm very interested in that issue. Yes, Your Honor. So the way the class was defined at the class certification stage was all non-exempt call center employees at Bank of America's 13 call center locations in California. There's no dispute that the overtime policies applied to each location and all of the class members. Defendant takes issue with the fact that some class members may not have been, in their words, exposed or subjected to the overtime policy because they did not work overtime and receive a bonus during the same pay period. However, that is ultimately going to be an issue that is decided that the damages phase and is irrelevant to the class certification issues. If the court wants to... I just echoed the damages if they were never injured. In other words, as I understand the bank's argument, the formula, the allegedly erroneous formula was never used to calculate anything for these 30-40% employees and so they were never injured due to the policy. That sounds more like a liability issue. It's not how much they were damaged. They weren't injured at all. Or at least that's the argument if I'm understanding the bank's argument correctly. Your Honor, the way I understand the bank's argument is the defendant's arguing that the liability stems from damages. In other words, there's a percentage of the class that did not suffer damage. But the liability in this case flows from defendant's unlawful conduct. This court held in Viqueiro v. Ashley Furniture that plaintiffs must be able to show that their damages stem from defendant's actions that created the liability. Excuse me, if I'm a single bank employee in the call center and because a class action is just an aggregation of individuals. So I'm a single employee and I bring an action against the bank for their erroneous calculation policy. But I never worked overtime or got a bonus in the same period. Would I be able to bring that claim? Would that claim be able to go forward? Certainly you'd be able to bring the claim, Your Honor. Whether or not at the end of the day you worked at a bank that used an erroneous formula, that formula was never applied to me. Well, Your Honor, to the extent that you didn't work overtime and weren't paid a bonus during the same pay period, the district court could have used its discretion to define a subclass, for example, of only the non-exempt employees who worked overtime and earned a bonus. Did you ask the request for a subclass not specifically tailored to the overtime claim? Because again, the policy applied equally to all class members, regardless of whether or not they worked overtime. It goes to the impact of the policy. Counselor, Judge Gould, if I could interject a question. Yes, Your Honor. I share some of the concerns that I think I'm hearing articulated by Judge Ikuda. The question I have is this. Clearly, the amount of damages doesn't have to be proven to get a class certified. But why am I incorrect in thinking that some injury at some level, some injury is a necessary element of both a claim that would be made and also for standing? In other words, to have both standing and liability, why wouldn't you not need, wouldn't an employee need to have some injury? Your Honor, I believe that this court answered that question in the Beccaro case, where it found that the liability stems, again, from the defendant's conduct. Here, the unlawful overtime policy that contravenes the California Supreme Court's decision in Alvarado that using total hours worked as opposed to non-overtime hours worked necessarily caused the class member's injury. And to your question about the damages, this court stated in Torres v. Mercer-Canyons that even a well-defined class may inevitably contain some individuals who have suffered no harm as a result of defendant's unlawful conduct. This court stated that, and I quote, fortuitous non-injury to a subset of class members does not necessarily defeat class certification of the entire class. And to the extent, Your Honor, that you're asking about the typicality and standing requirement, the lower court found that Plaintiff Castillo had standing to pursue her overtime claim because, based on the deposition testimony of Bank of America's 30th witness, the plaintiff worked overtime and received a bonus during the same period and necessarily suffered harm therefrom. Therefore, the court, without needing to find a dollar value on the amount of damages, determined that she was typical, the other class members, and that she had standing to pursue her claims. Thank you. And I do want to address what my first point was, that the district court erred in adopting defendant's argument that plaintiff must establish a common policy or calculation that uniformly establishes any liability. This is a creative argument, but it's not supported by Rule 30, excuse me, Rule 23 jurisprudence. By affirming the district court's order, this court would be reading a new requirement into Rule 23b that presently doesn't exist under Ninth Circuit law. The only two requirements that the court is required to find on the 23b-3 predominance inquiry is whether there are questions of law or fact common to class members that predominate over any questions affecting only individual members, and two, whether a class action is a superior method for fairly and efficiently adjudicating the controversy. Here, plaintiff put forth uncontroverted common evidence that all class members were subject to the same common policies for calculating overtime adjustments when a class member received a bonus and worked overtime during the same pay period. Accordingly, the common question of whether defendant's overtime policies complied with California law, including Alvarado, presents a predominant question that can be resolved for all class members in this single adjudication. The policy either violates Alvarado or it does not. And because determining whether a defendant's overtime policies violated California law can be adjudicated on a class-wide basis with an up or down, yes or no, whether or not it violated the California law by including all hours worked and not just non-overtime hours, the economies of Rule 23b-3 of time, efficiency, and expense can be achieved, and therefore the class should plaintiff can try this case entirely based on the common proof using the employee's time and payroll records. Plaintiff's expert can determine class-wide damages using mathematical calculations without the need for any class member testimony. In fact, the entire universe of evidence necessary to calculate class-wide damages is going to be contained in the time and payroll records that are maintained by defendant. And the alternative to a class-wide adjudication is the filing of hundreds, if not thousands, of individual cases for relatively low dollar amount. Now this would clearly defeat the purpose and rule of 23b-3. And I see that I have about four minutes left on my time and I'd like to reserve the balance for my rebuttal. May I proceed, Your Honor? Please. May it please the Court. Katie Barber on behalf of Bank of America. The District Court did not abuse its discretion by refusing to certify the proposed class. And I'll clarify one thing that my colleague said a few minutes ago. The proposed class at the class certification stage was simply in a broad class of all California non-exempt employees for the bank. Ms. Castillo did initially plead several subclasses, including one for class members who had worked overtime, which still would not resolve a lot of the issues here. But she did not propose any such subclass at the class certification stage. And so the District Court was well within its discretion to not sua sponte consider or create a class that was never asked for by the plaintiff. And also, Ms. Castillo now does not dispute that the District Court properly denied certification of the bulk of her putative class claims, including her meal period and minimum wage claims, as well as several derivative class claims. The only part of the District Court's decision that Ms. Castillo challenges here is its denial of her overtime rate claim. But the District Court got that part of its decision right as well for three main reasons. First, there are two distinct policies at issue here that were in place during two different periods of time, one of them after Ms. Castillo's employment ended. And each policy included incentive pay into the overtime regular rate using different complicated formulas. Second, a significant number of class members were never exposed to either policy, meaning that they could never have been injured under either policy. And this is a liability issue that defeats predominance, especially because the District Court would have to determine on an individual class member by class member basis, using time records and payroll studs, which class members fall into this group. And contrary to what my colleague just said, this is not a form of common proof, nor did Ms. Castillo argue that it was a common method of proof that could be used at the liability stage. Instead, she just argued that this was a damages issue. But instead, it is an individual class member by class member inquiry that would have to take place that is antithetical to the purposes of Rule 23. Did you agree that, assuming that, as you say, some members of the class or some large percentage of the class was not exposed to these policies, that this issue could be resolved by forming a subclass of those employees who were exposed to the policies, and that that class could go forward, or at least there wouldn't be a predominance issue for that? I don't agree with that, Your Honor. First of all, at this stage, we have two distinct policies, and they apply to many class members who were never exposed to either of them. And for this court to reverse on the basis that subclasses should be created, this court would have to find that the district court abused its discretion by not doing that in the first instance when the plaintiff never asked for it. So at this stage, what we have is this if Ms. Castillo had proposed subclasses to the district court, it would not resolve all of the predominance issues here. And that brings me to the third predominance issue, or the third main point and additional predominance issue, which is that many class members, any class members who were exposed to either policy, and again, that's maybe two-thirds of the proposed class, that they, many of them may have been overpaid rather than underpaid in any given pay period. What did you present to support that? Because when I tried to look at your formula, which was extremely complicated and counterintuitive, I didn't see the basis for that. So was there evidence in the record? Did you have, was it an expert declaration? I don't believe it was an expert declaration, Your Honor. I believe that the bank put forth just the kind of math that we had in our brief before this court showing ways in which each of the bank's calculations could have caused an overpayment. And that analysis is based in part on saying even if what Ms. Castillo challenges is wrong about this policy, even if that was an error, that error that Ms. Castillo challenges could still have resulted in a class member getting more overtime wages than she would have gotten under Ms. Castillo's proposed approach. And what's the percentage of the class would have gotten overpaid? I don't think we have that number, Your Honor, because the problem is that determining which class members were overpaid rather than underpaid would require additional individualized review by district court or the trier of fact. There would have to be review of every single class member's pay records and wage statements, and it would be a different review under each of the two policies. So basically it's theoretically, what you're saying is theoretically if there were five Saturdays in a month or whatever it was, theoretically somebody could have been overpaid, but there's really no information in the record about how pervasive that might be. Is that correct? I don't think it's as theoretical, Your Honor. I think that we, Ms. Castillo, for instance, when you're saying that the class member could have worked on Saturdays, so Ms. Castillo herself pled that there were many class members who worked on Saturdays and Sundays, and under the 2017 policy, Ms. Castillo challenged the fact that at the first step of that policy, the bank divided the bonus amount by the number of weekdays in the month without accounting for the fact that some class members might have worked on a sixth or seventh day of multiple weeks. But that is one example where you can see how a class member might have been overpaid or paid more than she would have been under Ms. Castillo's proposed approach, because at that first step of the policy, the bank would have divided the bonus payment by, say, there were 21 weekdays in the month, divided by 21 instead of the 23 days that actually accounted for the two Saturdays that that class member worked. And that would produce, that smaller denominator would produce a higher regular rate overall. And so that's it. Ms. Barber, if I could have just gotten a full answer on our question, I'd like to interject a question. So I'll pose this to you, Ms. Barber, representing Apelli, but Mr. Murray could also address this in his rebuttal. I was under the impression that the United States Supreme Court had issued a decision at some point that said that it was the plaintiff's burden in a class action to frame subclasses, and that a district court had no obligation to do that sua sponte. I don't remember the name of the case I'm thinking about. I wondered if you're aware of any precedent of that nature. Certainly, Your Honor. I don't know. It may originally come from a Supreme Court case, but this court has said multiple times, and I think in Vinole and Lozano, both of which we cite in our brief, those both talk about the fact that it is the plaintiff's burden to construct and define the class, and that the district court is under no obligation to consider or create a class the plaintiff did not ask for in the first instance. So there's certainly authority for that, and that's why I think this court could not reverse just on the basis of that subclasses could solve some of the issues here. And again, they could not solve all of the issues here. This is not a run-of-the-mill, wage-and-hour class action where there was one single, uniform policy where it is undisputed or there is common class-wide evidence establishing that the proposed class was uniformly exposed to that policy, and if exposed, were uniformly underpaid as a result. This case is unique because of the number of class members who were never subject to either policy, and who, if they were subject, did have their bonus factored into incentive pay and may have been overpaid as a result. And as the district court correctly held, these are both liability issues that make this class unfit for certification. Because a typical wage-and-hour class action involves one policy of not paying incentive pay or not paying minimum wage, and it generally has class-wide proof showing that a proposed class has been uniformly exposed to and unpaid because of a policy, that usually makes the court's job after certification simple. The court can generally decide first whether the policy is unlawful and then what damages the defendant owes as a result. But there is much more to this case and much more that the court here or the trier of fact would have to do between that initial legality question and the ultimate damages questions. And that's because of these two major liability issues that exist that make this class insufficiently cohesive and that cannot be decided on a class-wide basis. And Ms. Castillo does not dispute that these are issues for the class. Going back to one of Judge Jaicuda's questions, there may not be record evidence of exactly how many class members may have been overpaid, but there is also no record evidence of any class member, including Ms. Castillo, who was underpaid as a result of either of these policies. And so Ms. Castillo does not dispute that these are issues for this proposed class. Instead, she has just cast them off as damages issues. But damages questions are the questions that arise after a defendant has been held responsible for unlawful conduct. And at that point, the court can decide how to make the plaintiff whole and the extent of the harm. But what we're talking about are intermediate liability questions of whether the bank has any responsibility to any plaintiff in the first instance. So we're talking about the fact of injury as opposed to the extent of injury. And that's one of those questions that qualifies a class member's claim as a genuine controversy. That's what this has to be common to the class and determined on a class-wide basis. And so we're talking about the fact of injury and whether it is susceptible to class-wide proof. And because the district court relied on these liability issues rather than damages issues, most of Ms. Castillo's argument just misses the point. We are not arguing that damages issues defeat predominance, and we're not arguing that Ms. Castillo has to prove any claims on the merits. But she does have to establish at this stage that liability questions can be decided on a class-wide basis and that they predominate and that common issues predominate over individual questions. And she has not done that here. And I think in particular, the incohesiveness of the class and the overpayment, there's no authority certifying a class in this situation where you have every class member who, first of all, you have many class members not exposed to either policy. And then every class member who was exposed to that policy did have incentive pay factored into her overtime premiums and then likely was overpaid as a result. We have just to the numbers, again, I think are staggering that there is no class certified in this circumstance that Ms. Castillo has identified. You have 35 percent of the proposed class was never exposed to the 2016 policy because they never received a bonus and worked overtime in the same key period. And that's true for almost 42 percent of the proposed class under the 2017 policy. And not only do these numbers alone defeat predominance because they make this class insufficiently cohesive, but to even figure out who these class members are, the district court would have to undergo individualized analysis of each class member's records and pay statements. And those kinds of mini trials are just not what Rule 23 permits and not what class certification is for. And so for all of these reasons, I think the district court properly exercised its discretion to deny certification of the proposed class. And I will feed the rest of my time. Thank you, Ms. Barber. Thank you, Your Honor. Okay, so now for Mr. Murray, I think you have some time. I do. Thank you, Your Honor. Three main points with respect to Judge Acuda's question regarding whether or not there is any evidence in the record of an actual overpayment. I think that's critical here because defendants' argument that under the overtime policies, a class member may potentially have been overpaid is exactly that. It's attorney argument. There is no evidence whatsoever that you will find in the record that any class member suffered an actual overpayment as a result of the policies. And with respect to the calculations, on how defendant is arriving at these hypothetical overpayments, I'll note that the defendant does not address the issue of how an overpayment would result from using total hours worked as opposed to non-overtime hours worked. The defendant wants to talk about the two steps when you're calculating the weekly incentive. But when you calculate the hourly incentives based on the total hours worked versus non-overtime hours worked, necessarily that will result in a dilution in the employer's favor. To my second point regarding the over-breath of the class, this was not an issue that the district court specifically addressed in its order denying class certification, and certainly was not the reason that the court found that plaintiffs failed to establish predominance. This is something that is easily rectified by the formation of a subclass, which the district court is within its discretion to do at any time. And to your question, Judge Gould, about the Supreme Court precedent, I'm not aware of the precedent, and it certainly was not raised in either of the briefs, either defendant's answering brief or plaintiff's brief. And my third point regarding the policies, the court did not focus its analysis of the predominance requirement on any differences between the 2016 overtime policy and the 2017 overtime policy. And likely that's because the two policies share a common nucleus in that both policies use total hours worked and the divisor as opposed to non-overtime hours worked, which is a clear violation of Alvarado and one which defendant does not dispute or has not raised as a defense. It's simply defendant's contention that calculating damages or whether or not defendant is liable for damages would require individual inquiries and many trials, which is simply not true because once we've determined whether or not the policies violate California law by improperly calculating overtime, then our expert can simply calculate class-wide damages by using the time and pay records of the employees. And further, my colleague mentioned that all class members were not exposed to the policies. That's simply not true. There's no dispute that the policies applied equally to all class members at all 13 call center locations, whether or not they bonus during the same pay period is another issue, but whether or not there's exposure is simply unfounded in the record. And I see that I have 15 seconds left. I would just conclude that the district court failed in finding that, erred in finding that plaintiff did not establish predominance because the issue of whether or not the policies violated California law is a common question of law that can be satisfied in a single adjudication. And therefore we ask this court to reverse the district court's order denying class certification. Okay. So are there any questions from Judge Ezra? Thank you, Judge Gould. No, I don't have any questions. Okay, none here. Then I want to thank Mr. Murray and Ms. Barber for your excellent arguments and the, uh, this deal case shut out now, submitted. Does that, uh, I think that's our last case for the day. And so the court will, uh, adjourn until tomorrow. Thank you, Your Honors. Thank you, Your Honors.
judges: Gould, Ikuta, Ezra